UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWIN MARTINEZ,

    Plaintiff,

  v.                                                                Case No. 24-CV-951-SCD

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## DECISION AND ORDER

      Edwin Martinez applied for social security benefits based primarily on limitations stemming from his various mental health conditions. After a hearing, an administrative law judge denied the claim for benefits, finding that, although Martinez had moderate limitations in concentrating, persisting, or maintaining pace—CPP in social security lexicon—he could perform certain jobs that involve simple instructions, regular work duties and expectations, occasional changes, and limited contact with others. Martinez seeks judicial review of that decision, arguing that the ALJ failed to adequately account for his CPP limitations. Because substantial evidence supports the ALJ's finding that Martinez retained the mental ability to perform simple, isolated tasks in two-hour stints, I will affirm the denial of disability benefits.

## BACKGROUND

      Martinez was born in Puerto Rico in June 1990. *See* R. 57, 262, 555–56.[1] After graduating from high school, he studied to be an electrician and got a job as an electrician assistant. R. 556. Martinez first started feeling depressed in around 2015 when his girlfriend

---

[1] The transcript is filed on the docket at ECF No. 11-1.

broke up with him and moved to Wisconsin with the couple's young daughter. R. 556, 601. In 2018, Martinez moved to the continental United States, living first in New Jersey and New York before settling in Wisconsin. *See* R. 480, 556, 571, 599. Since then, he has worked as a dishwasher, a roofer, a factory worker, and a handyman. *See* R. 58–60, 290, 545, 571, 668.

Since leaving Puerto Rico, Martinez has sought treatment for various impairments. In March 2019, he went to the psychiatric emergency department with depressive and anxious thoughts and experiencing hallucinations and suicidal ideation. *See* R. 555–616. He attempted to hang himself while at the psychiatric center and was hospitalized for several days before being discharged in stable condition. After being released, Martinez started seeing a psychiatrist, Luis Vazquez Borrero. *See* R. 444–47, 480–85, 622–30, 675, 679–87, 711–25. Martinez's mental status examinations with Dr. Vazquez were consistently unremarkable, including an attention span within normal limits. Dr. Vazquez diagnosed psychosis, anxiety, insomnia, and major depression and prescribed medication, which Martinez did not always take. Martinez has also been treated for various physical impairments, including severe hypothyroidism and low back pain. *See* R. 449–77, 488–554, 632–74, 727–47. Although Martinez claimed that he was unable to concentrate well, providers did not observe any concentration issues during his non-psych visits.

In April 2021, Martinez applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. *See* R. 32, 262–68, 285–303, 429–36. He alleged that he became disabled on February 28, 2021, due to depression, panic attacks, anxiety, schizophrenia, thyroid pain, migraine headaches, and arthritis. According to Martinez, his mental impairments limited his ability to remember, complete

2

Case 2:24-cv-00951-SCD    Filed 04/04/25    Page 2 of 14    Document 23

tasks, concentrate, follow instructions, and get along with others. Martinez asserted that he couldn't pay attention for very long and that he didn't finish what he started.

The state agency charged with reviewing the disability applications on behalf of the Social Security Administration denied Martinez's claim initially and upon his request for reconsideration. *See* R. 75–108. Jason Kocina, PsyD, reviewed Martinez's mental health records initially and found that his mental impairments did not significantly limit his ability to do basic work activities. *See* R. 76–78, 84–86. Joanne Coyle, PhD, the reviewing psychologist at the reconsideration level, found that Martinez suffered from severe but not disabling schizophrenia, depression, and anxiety. *See* R. 90–96, 101–07. Specifically, Dr. Coyle found that Martinez had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.[2] R. 92, 103. With respect to sustained concentration and persistence, Dr. Coyle found that Martinez was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 94, 105. Given those CPP limitations, Dr. Coyle believed that Martinez could sustain attention and concentration "for simple tasks of a nonsocial nature and maintain effort for

---

[2] These four areas of mental functioning are known as the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E). The paragraph B criteria are measured on a five-point scale: none, mild, moderate, marked, and extreme. *See id.* § 12.00(F)(2). "Mild" means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* § 12.00(F)(2)(b). "Moderate" means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

3

two hour periods over the course of an eight hour work day and standard work week within acceptable pace and persistence standards." *Id.* After the state-agency denial, Martinez requested a hearing with an ALJ. *See* R. 129–34.

Meanwhile, Dr. Vazquez submitted a letter and completed a questionnaire in support of Martinez's disability applications. *See* R. 444–47, 675. Dr. Vazquez indicated that, as a result of his various mental impairments, Martinez experienced low energy, poor motivation, problems with attention and concentration, and impaired reality testing. R. 675. He opined that Martinez had marked[3] deficiencies of concentration, persistence, or pace and would miss more than four days of work per month due to his impairments or treatment. R. 446–47. Overall, Dr. Vazquez believed that Martinez was unable to maintain gainful employment. R. 675.

Martinez had his hearing with an ALJ in February 2023. *See* R. 51–74. He was represented by counsel at the hearing and had assistance from Spanish-speaking interpreters. Martinez testified that he was unable to work due to daily pain in his hip and back, anxiety, and difficulty sleeping. R. 62–63. A vocational expert testified that a hypothetical person with Martinez's age and vocational profile could not perform his past relevant work as a roofing helper or a factory worker if he were limited to a restricted range of light work, including the ability to understand, remember, and carry out only simple instructions and requiring regular work duties and expectations with occasional changes, occasional interaction with co-workers and supervisors, and no interaction with the public. R. 69–73. According to the vocational expert, that person could perform other jobs that existed in the national economy, such as a

---

[3] "Marked" means that the claimant's functioning "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).

laundry sorter, a mailroom clerk, a marker, an addresser, a press clipper, and a lens inserter. The vocational expert indicated that workers are entitled to one thirty-minute lunch break and two fifteen-minute breaks, typically one in the morning and one in the afternoon. She further indicated that workers are permitted only one absence per month and could arrive late or leave early once per week; anything more would be work-preclusive.

On January 31, 2024, the ALJ issued a written decision finding that Martinez was not disabled. *See* R. 26–50. The ALJ considered the disability applications under 20 C.F.R. §§ 404.1520 and 416.920, which set forth a five-step process for evaluating DIB and SSI claims. *See* R. 32–45. At step one, the ALJ determined that Martinez had not engaged in substantial gainful activity since his alleged onset of disability. R. 34. The ALJ determined at step two that Martinez had six severe impairments: depression, psychosis, anxiety, bipolar disorder, insomnia, and lumbar degenerative disc disease. R. 35–36.

At step three, the ALJ determined that Martinez did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 36–38. The ALJ found that Martinez had a moderate limitation in each of the four paragraph B criteria. R. 36–37. With respect to concentrating, persisting, or maintaining pace, the ALJ noted that Martinez alleged that his impairments affected his ability to complete tasks and concentrate and that he could not finish what he started. R. 37. However, according to the ALJ, Martinez did not present with any significant levels of difficulties in attention or concentration during his medical appointments.

Prior to step four, the ALJ assessed Martinez's residual functional capacity—that is, the most he could do despite his physical and mental limitations, *see* 20 C.F.R. §§ 404.1545(a)

and 416.945(a). The ALJ determined that Martinez could perform a restricted range of light exertional work. R. 38. As for mental limitations, the ALJ found that Martinez was able to understand, remember, and carry out simple instructions; required regular work duties and expectations with occasional changes; was able to occasionally interact with co-workers and supervisors; and could never interact with the public.

In assessing that RFC, the ALJ considered the objective medical evidence, Martinez's subjective allegations, and the medical opinion evidence. *See* R. 38–43. The ALJ noted that Martinez alleged that his mental impairments affected his ability to remember, complete tasks, concentrate, follow instructions, and get along with others. R. 38. The ALJ found that Martinez's impairments could reasonably be expected to cause his alleged symptoms; however, according to the ALJ, Martinez's statements about the intensity, persistence, and limiting effects of those symptoms were inconsistent with the evidence in the record. R. 39. With respect to concentrating, persisting, and maintaining pace, the ALJ noted that providers did not observe any issues with concentration during Martinez's non-psych appointments and that Martinez's attention span was normal during all his mental status exams. R. 39–41. As for the opinion evidence, the ALJ found persuasive the prior administrative medical findings of reviewing psychologist Dr. Coyle. R. 41–42. The ALJ explained that Dr. Coyle's CPP findings were consistent with Martinez's self-reported issues with concentration, the lack of reports to providers of significant concerns with concentration, Martinez's overall conservative psychiatric care, and Martinez's presentation with normal attentiveness. The ALJ found unpersuasive the opinions of Dr. Vazquez, Martinez's treating psychiatrist. R. 43.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Martinez could not perform his past relevant work as a roofing helper or a

6

factory worker. R. 43. Relying on the vocational expert's testimony, the ALJ determined at step five that there were jobs that existed in significant numbers in the national economy (e.g., as a laundry sorter, a mail room clerk, a marker, an addresser, a press clipper, and a lens inserter) that Martinez could perform. R. 44–45. Based on the step-five finding, the ALJ determined that Martinez was not disabled from his alleged onset date through the date of the decision. R. 45.

The Social Security Administration's Appeals Council subsequently denied Martinez's request for review, R. 1–7, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In July 2024, Martinez filed this action seeking judicial review of the Commissioner's decision denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* Compl., ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 5, 7, 8. Martinez filed a brief in support of his disability claim, ECF No. 12; the acting commissioner of the Social Security Administration filed a brief in support of the ALJ's decision, ECF No. 21; and Martinez filed a reply brief, ECF No. 22.

## LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, modify, or reverse the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's

decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Martinez seeks remand for a rehearing, arguing that the ALJ erred in assessing his mental RFC. The ALJ determined at steps two and three of the five-step evaluation process that Martinez suffered from severe but not presumptively disabling depression, psychosis, anxiety, and bipolar disorder. *See* R. 35–38. In making that determination, the ALJ found that Martinez had a moderate limitation in each of the four paragraph B criteria. The ALJ ultimately concluded that Martinez was able to understand, remember, and carry out simple instructions; required regular work duties and expectations with occasional changes; was able to occasionally interact with co-workers and supervisors; and could never interact with the public.

Martinez argues that the ALJ did not adequately account for his moderate limitation in concentrating, persisting, or maintaining pace and failed to build a logical bridge between the evidence and the assessed mental limitations. As support, Martinez relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), and a line of Seventh Circuit cases holding that limiting a claimant to unskilled work or limiting a claimant's interactions with others or limiting workplace changes generally does not account for moderate CPP limitations. *See* Pl.'s Br. 3–7; Pl.'s Reply 2–6. The Seventh Circuit has clarified, however, that "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)). The Seventh Circuit has also held that "an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (citing *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002)). An ALJ's reliance on a medical expert's narrative RFC is reasonable only "where that narrative adequately encapsulates and translates [the expert's] worksheet observations." *Varga*, 794 F.3d at 816 (citing *Johansen*, 314 F.3d at 286).

In fashioning both the hypothetical presented to the vocational expert, *see* R. 70, and the ultimate mental RFC assessment, *see* R. 38, the ALJ here relied on the prior administrative medical findings of Dr. Coyle, the reviewing psychologist at the reconsideration level. Dr. Coyle found that Martinez was moderately limited in four of the eight sustained concentration and persistence categories listed on the mental RFC form: (1) the ability to carry out detailed instructions, (2) the ability to maintain attention and concentration for

9

extended periods, (3) the ability to work in coordination with or in proximity to others without being distracted by them, and (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 94, 105. Dr. Coyle translated those worksheet observations into a narrative RFC, finding that Martinez could sustain attention and concentration "for simple tasks of a nonsocial nature and maintain effort for two hour periods over the course of an eight hour work day and standard work week within acceptable pace and persistence standards." *Id.* In her written decision, the ALJ accurately described Dr. Coyle's worksheet observations and narrative RFC and explained why she found Dr. Coyle's opinions persuasive. R. 41–42.

Martinez insists that there's a disconnect between Dr. Coyle's worksheet observations and her narrative RFC statement, but he never clearly articulates where the connection was lost. *See* Pl.'s Reply 3–6. There is no disconnect—each of the four checkbox findings has a corresponding limitation in the narrative RFC. Dr. Coyle found Martinez moderately limited in his ability to carry out detailed instructions; the narrative limited Martinez to simple tasks.[4] Dr. Coyle found Martinez moderately limited in his ability to maintain attention and concentration for extended periods; the narrative indicated that Martinez was able to sustain attention and concentration and maintain effort for two-hour periods. Dr. Coyle found Martinez moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them; the narrative limited Martinez to simple tasks of a

---

[4] In assessing Martinez's ability to understand and remember, Dr. Coyle already limited him to simple instructions. *See* R. 94, 105.

10

nonsocial nature.[5] Finally, Dr. Coyle found Martinez moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the narrative indicated that, if given simple, isolated tasks, Martinez could sustain attention and concentration and maintain effort for two-hour periods *over the course of an eight-hour workday and standard workweek* within acceptable pace and persistence standards. Thus, in contrast to Martinez's argument, *see* Pl.'s Reply 5–6, Dr. Coyle's narrative RFC did account for both daily and weekly issues maintaining concentration, persistence, and pace.

    Martinez contends that finding him capable of sustaining attention and concentration for two-hour periods did not adequately account for his moderate limitation maintaining attention and concentration for extended periods. *See* Pl.'s Reply 1–2. As support, he cites the Social Security Administration's own policy manual, which indicates that the ability to maintain concentration and attention for extended periods—"the approximately 2-hour segments between arrival and first break, lunch, second break, and departure"—is required *for all jobs*. *See* Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425020010. Thus, according to Martinez, sustaining attention and concentration for two-hour periods really is no limitation at all.

    Martinez's reliance on the POMS is misplaced. That manual "is for the internal use of agency employees, has no legal force, and cannot bind the agency, let alone the district court." *Turner v. Saul*, No. 20-C-998, 2021 WL 2134955, 2021 U.S. Dist. LEXIS 98305, at *24 (E.D. Wis. May 25, 2021) (quoting *Flint v. Colvin*, 543 F. App'x 598, 600 (7th Cir. 2013)).

---

[5] Martinez does not challenge the reasonableness of the ALJ's explanation that a limitation to occasional interactions with co-workers and supervisors accommodated Dr. Coyle's vague assessment that Martinez should be limited simple tasks "of a nonsocial nature." R. 42.

Moreover, "finding that a claimant can maintain attention for two-hour segments does not inherently contradict a finding of moderate CPP limitations." *Gonzales v. Kijakazi*, No. 21-CV-645-SCD, 2022 WL 4533857, 2022 U.S. Dist. LEXIS 175752, at *18 (E.D. Wis. Sept. 28, 2022); *see also Bentley v. Comm'r*, No. 21-CV-1134-SCD, 2022 WL 17730119, 2022 U.S. Dist. LEXIS 226598, at *34–35 (E.D. Wis. Dec. 16, 2022) (finding no error where a reviewing psychologist's narrative RFC found the claimant capable of sustaining attention and concentration for simple and multi-step tasks and maintaining effort for two-hour periods, despite a checklist finding that the claimant had a moderate limitation maintaining attention and concentration for extended periods).

The ALJ's failure to explicitly include Dr. Coyle's proposed two-hour attention/concentration limitation in the RFC assessment was at most harmless error. An error is harmless if the court is convinced that the ALJ would reach the same result on remand. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). The ALJ mentioned Dr. Coyle's narrative findings when discussing the reviewing psychologist's opinions and explained why she found them persuasive. *See* R. 41–42. Also, at the administrative hearing, the vocational expert testified that workers are permitted three breaks during an eight-hour workday: a fifteen-minute break in the morning, a thirty-minute break for lunch, and a fifteen-minute break in the afternoon. *See* R. 71–72. Thus, difficulty maintaining attention and concentration is vocationally relevant only if a claimant is unable to sustain attention and concentration for less than a two-hour period. Martinez, however, presents no evidence suggesting he was that limited. As the ALJ accurately noted, Martinez's attention span was within normal limits during *every* mental status exam, and providers did not observe *any*

12

concentration issues during Martinez's non-psych appointments. *See* R. 37 (citing Exhibits 2F/21, 24, 30; 3F/3, 5, 7; 6F/6, 9, 11, 13; 9F/5–6).

The ALJ did not, as Martinez suggests, *see* Pl.'s Reply 2–5, attempt to accommodate his moderate CPP limitations by simply restricting him to unskilled work. Rather, the ALJ assessed several evidence-based restrictions that accounted for Martinez's specific mental health symptoms, essentially finding Martinez capable of sustaining attention and concentration on simple, isolated tasks in two-hour stints. In fashioning that mental RFC, the ALJ reasonably relied on the findings of Dr. Coyle, whose narrative RFC adequately encapsulates and translates her worksheet observations. *See Burmester*, 920 F.3d at 511–12 (finding no error where the ALJ reasonably relied on a reviewing psychologist's narrative translation); *Urbanek*, 796 F. App'x at 915 (same). Although the ALJ did not explicitly adopt one of Dr. Coyle's narrative findings—that Martinez could sustain attention and concentration and maintain effort for two-hour periods—including such a limitation in the RFC assessment would not have changed the outcome of the ALJ's decision.

Finally, Martinez does not explain what additional restrictions, supported by the record, would have adequately accommodated his moderate CPP limitations. The ALJ found that Martinez's ability to concentrate, persist, and maintain pace was moderately limited, but Martinez does not cite any evidence suggesting that those deficits keep him performing simple, isolated tasks for two-hour periods. Martinez did not testify about restrictions in his ability to concentrate, persist, or maintain pace, and the medical record revealed no issues with attention or concentration. Thus, any error in fashioning the mental RFC was harmless. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (rejecting a plaintiff's argument that an ALJ failed to account for his moderate CPP limitation in part because the plaintiff failed to

13

hypothesize what kinds of work restrictions would have accommodated that limitation); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020) (same); *Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence supports the ALJ's assessment of Martinez's mental RFC and that Martinez has not demonstrated that the ALJ committed reversible error in denying his disability claim. I therefore **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 4th4th day of April, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge